**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CLARK PRODUCTS, INC., Subsidiary of Nopco Chemical Company, Respondent.**

**No. 16010.**

United States Court of Appeals Seventh Circuit.

Sept. 28, 1967.

. Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy Sherman, Atty., National Labor Relations Board, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Elliott Moore, Atty., National Labor Relations Board, for petitioner.

Joseph A. Yocum, Arthur R. Donovan, Harry P. Dees, Evansville, Ind., for respondent, Kahn, Dees, Donovan & Kahn, Evansville, Ind., of counsel.

Before HASTINGS, Chief Judge, and CASTLE and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

The plant operated by Clark Products, Inc. and involved in this proceeding processes foam rubber and similar products for use in furniture and the like. There were 24 employees in April, 1965. Seventeen were production and maintenance employees and constituted an appropriate unit.

On April 27, 1965, the regional representative of the Upholsterers' International Union had authorization cards from eleven of the seventeen. He wrote to Fischer, the plant manager, requesting recognition. On April 30, fourteen of the seventeen were laid off. The eleven signers were among them. On May 5, Fischer wrote the union denying the request for recognition. On various dates from May 10 to 21, all but two of the employees were notified to report for work or be removed from the payroll. Six, five of whom had obtained other jobs, did not report and were promptly notified they had been removed.

After hearing, the trial examiner filed a decision, containing findings, conclusions, and a recommended order.[1] These were adopted by the board with one modification. The scope of the order is not challenged if the findings be approved.

The key findings of the examiner were (1) that the purpose of the April 30 layoff was to discourage and defeat the attempt to organize, and to avoid bargaining, (2) that a day or two before the layoff foreman Gustafson had asked a union adherent, "What are you trying to do, get unionized and lose all of our jobs for us?" and said that "hell was going to break loose," and (3) that the refusal to bargain was not based on a genuine doubt of majority status, but was an attempt to gain time to undermine the union's position. Findings (1) and (3), with other incidents, led to a finding of sec. 8(a)(1) and 8(a)(3) unfair labor practices, and finding (3) to a finding of an 8(a)(5) unfair labor practice.

We have considered the challenges made by the company in this court and our conclusions are as follows:

### The motivation for the layoff

The examiner might have found with evidentiary support that the layoff was decided upon in good faith because of lack of work and that the decision preceded knowledge of the union's demand for recognition although made at the time the organization effort was in process. On April 30, only two orders from customers remained to be filled although there was testimony estimating the average number of orders at ten or twelve. The plant manager, Fischer, was out of town and foreman Gustafson testified that on April 27 Fischer had told him by telephone that if things did not pick up by the end of the week (April 30) he was to lay the people off. Gustafson testified he did not know of the attempt to organize the plant at that time. The three production employees not laid off were the senior employees, and three who were laid off had not signed cards for the union. All but two employees were given an opportunity to return to work in May and the company did not begin rehiring replacements until after the call back. The company has five other similar plants elsewhere and two are organized.

The examiner found otherwise, however, and we think his finding is supported by substantial evidence in the light of the whole record. The examiner discredited Gustafson's testimony in several particulars.

There was strong circumstantial evidence that Fischer decided on the layoff April 30 and that it was a direct response to the union demand for recognition.

The union's April 27 letter was not opened until Fischer called the office the afternoon of April 30. It was then read to him. Fischer testified that he talked to Gustafson during that call. At 4:30 Gustafson told the employees of the layoff, and said, "I just got the word myself."

1. 160 N.L.R.B. No. 5.

Although there were only two unfilled orders, the company failed to show how much work remained to be done on them, and there was testimony that the size of orders varied considerably. It appears that at times there was work to be done not reflected in orders. There had been layoffs before, but never so deep a cut, never for so long a period, and the company had never before notified employees in writing that they must report in two days or be removed from the payroll.

There had been an attempt at organization one or two years before. There was testimony that Fischer called the employees in "and he said this was a free country, that no damn union or anybody else, no man off the street or anybody was gonna come in and tell him how to run his place of business because he would close his doors first."

There were other incidents giving rise to a reasonable inference of animus.

A few weeks after April 30 Fischer had a chance conversation at a local bank with one of the employees who had been active in organizing, and who had not returned to work. Fischer told him not to come onto the plant premises or he would have him prosecuted for trespassing.

In September, Gustafson met a union adherent who had not returned to work. He indicated he needed her help and would like to give her a job but would have to consult management first because of the situation with the union. He later informed her he could not take her back with things as they were.

The one employee who was never recalled was the man most active in the organizational effort. Late in September the company informed him for the first time, through its lawyer, that he had been laid off because the company was dissatisfied with his work.

*The Gustafson remark.*

Finding (2), above mentioned, was based on the testimony of Mrs. Hale. The incident was denied by Gustafson.

The company emphasizes the fact that no other employee claimed any similar remark had been made to him by anyone in management. That fact does not render Mrs. Hale's testimony inherently incredible. The examiner could and did believe her and disbelieve Gustafson.

Whatever other importance may be attributed to the remark, it corroborates the proposition that the organizational effort triggered the layoff.

*The duty to bargain.*

 Counsel for the company does not suggest any particular basis it had for a doubt that a majority of the employees desired representation by the union. It relies in its brief on the bald proposition that "It is axiomatic in the ordinary case when faced with a union demand for recognition on the basis of signed union cards, an employer may lawfully insist on a Board conducted election to establish a labor union's majority status or right to represent his employees"—assuming he "does not violate the Act as a means of dissipating this status." We do not read the law so broadly, even with the qualification assumed. Moreover, in this case, the board has found that the layoff was an effort toward such dissipation.

The board is entitled to enforcement of its order.